IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| ABSTRAX, INC. | § | |
| Vs. | § | CIVIL ACTION NO. 2:07CV221 |
| DELL, INC. | § | |

**REPORT AND RECOMMENDATION**

**1.   Introduction**

The above-referenced case was referred to the undersigned United States Magistrate Judge for pre-trial purposes in accordance with 28 U.S.C. § 636.  Currently pending before the court is Dell's motion for partial summary judgment of no infringement (Dkt. #161).  For the reasons discussed herein, the undersigned recommends granting the motion in part and denying the motion in part.

**2.   Discussion**

   **A.   Factual Background and Procedural Posture**

In this patent infringement case, Dell seeks a partial summary judgment that some of its products do not infringe certain claims.  Dell also seeks a partial summary judgment on questions of infringement by the doctrine of equivalents, indirect infringement, and infringement under 35 U.S.C. § 271(g).

Dell's motion first requests a partial summary judgment that certain products do not infringe certain asserted claims.  Before addressing the merits of the summary judgment arguments, the

undersigned will set forth the relevant claim limitations. Abstrax accuses certain products of infringing claims 1-4, 9, and 12. Claim 1 is an independent claim, and claims 2-4 and 9 depend from claim 1. Claim 12 is a dependent claim, and it depends from claim 10.

> The first limitation of claim 1 of the '328 patent requires:
>
> providing one or more abstract assembly steps for assembling the product, the abstract assembly steps containing variable portions for assembling the product with potentially different configurations, the variable portions including variable parameters capable of representing different component information, text information explaining how to assemble or connect one or more of the components of the product, and the variable portions further including at least one of
>
> > an identifier of one or more computer graphics images to be displayed indicating how to assemble or connect one or more of the components of the product, and
> > machine-readable instructions for the computer to draw and display one or more computer graphics images indicating how to assemble or connect one or more of the components of the product;

'328 patent, claim 1.

Like claim 1, dependent claim 12 requires the limitation "an identifier of one or more computer graphics images to be displayed indicating how to assemble or connect one or more of the components of the product," as well as the other limitations included in independent claim 10.

Dell's motion focuses on two limitations in these claims. First, Dell asserts that certain products do not meet the "text information" limitation. As shown by claim 1, this limitation requires that an accused system include abstract assembly steps which, in turn, have variable portions. The variable portions must have variable parameters capable of representing different component information. In addition, the variable portions must have "text information explaining how to assemble or connect one or more of the components of the product."

In the patent, the specification describes the method in the context of assembling a simple

product–a cube. The specification provides the following example of an abstract assembly step with text information: "Paint background of block <color>.{graphics to be used} (paint-block.<color>, spray-can.image) {computer drawn image} none." *See* '328 patent, 7:15. This abstract assembly step example has a variable portion with a variable parameter <color>. It also includes text information, "paint background of block," which explains to an assembler how to assemble or connect one or more of the components of the product. In operation, the program would resolve this "abstract step" into an actual assembly instruction by applying a configuration model and replacing the color variable with the color used in the configuration model. '328 patent, 8:33-35. After applying a configuration model specifying a red background color, the invention creates an assembly instruction that would read, "Paint background of block red." *See* '328 patent, 7:43-44 (describing encoded work instruction sequence). Dell's motion argues that some of the accused products do not satisfy the text information limitation.

Dell also presents a second noninfringement argument. As set forth above, claim 1 requires either "an identifier of one or more computer graphics images to be displayed indicating how to assemble or connect one or more of the components of the product" or "machine-readable instructions for the computer to draw and display one or more computer graphics images indicating how to assemble or connect one or more of the components of the product." Dependent claim 12 also requires an identifier of a computer graphics image to be displayed indicating how to assemble or connect one or more components of the product. Returning to the example used in the patent, the identifier used in the abstract assembly step is for a spray paint can image, which, when resolved into an actual assembly instruction, will instruct the builder that the step involves painting. Dell asserts that several of the accused products do not contain the "graphics image" limitation.

This report and recommendation will first examine the literal infringement issues. Then, the undersigned will consider whether Abstrax has any evidence of infringement under the doctrine of equivalents. The report will also address the issue of indirect infringement. Finally, the report will address whether 35 U.S.C. § 271(g) applies to this case.

**B.    Discussion**

*1.    Literal infringement issues*

The accused products include Dell's Expansion Card Placement Program ("ECPP"), Web Card Placement Program ("WCPP"), Web Memory Placement Program ("WMPP"), Web Storage Placement Program ("WSPP"), Web Object Placement Program ("WXPP"), and PrepStation. Dell argues that it is entitled to summary judgment of no literal infringement of claims 1-4 and 9 of the '328 patent because Prepstation, WCPP, WMPP, WSPP, and WXPP do not contain "text information." In addition, Dell contends that ECPP, WCPP, and WMPP do not have graphics images indicating how to assemble or connect one or more of the components of the product. Therefore, Dell requests partial summary judgment on asserted claims 1-4, 9, and 12 for this reason as well. Abstrax responds by pointing to the opinions and declaration of its expert, Dr. John Keyser, in support of its infringement theory. The undersigned has reviewed the cited portions of the expert's opinions and has considered the evidence in the light most favorable to Abstrax. The court will examine the accused products in the order they are referenced in the motion for summary judgment.

*A.    Text information*

*1.    PrepStation*

Dr. Keyser identified two categories of text within the PrepStation abstract assembly steps

that he contends satisfy the text information limitation: (1) a text variable "strtmp," which resolves into text instructions in the actual assembly instructions and (2) instructive text that appears in the abstract assembly steps in the form it is displayed in the instructions: "current PN: #, Part # of #." Dell asserts that neither of these is sufficient to meet the text information limitation. The undersigned disagrees. Viewed in the light most favorable to Abstrax, the text included in the "current PN#, Part # of #" instruction explains how to assemble or connect components of the product. Although it does not provide as much explanation as the "paint background of block <color>" step illustrated in the patent, it is nevertheless sufficient to create a fact issue on infringement of that limitation.

With respect to the text variable "strtmp," the undersigned is persuaded by Dell's argument that the variable does not constitute text information because it does not "explain how to assemble or connect one or more components of the product." Abstrax argues that this variable eventually resolves into text instructions provided to an assembler which explains how to assemble or connect one or more components of the product. The relevant claim language, however, requires "abstract assembly steps" containing a variable portion which, in turn, has "text information explaining how to assemble or connect one or more of the components of the product." *See* '328 patent, claim 1. As illustrated in the patent, the "text information" comprises actual text which indicates how to assemble or connect one or more of the product components.[1] That the variable "strtmp" eventually resolves into text information in an actual assembly instruction is insufficient to meet the claim

---

[1] Although it is improper to compare the accused products to the preferred embodiment described in the patent, what is significant is that the claim limitation itself requires text information in the abstract assembly step that is sufficient to explain how to assemble or connect. The example provided with the patent is consistent with the claim language.

limitation. For literal infringement, Abstrax must show that all of the claim limitations are met by the accused programs. *Zodiac Pool Care, Inc. v. Hoffinger Indus., Inc.*, 206 F.3d 1408, 1415 (Fed. Cir. 2000). As such, the "strtmp" variable does not constitute "text information" within the scope of claim 1.

### 2. WCPP

Next, the undersigned considers the WCPP product. Abstrax has created a genuine issue of material fact that WCPP has, in the variable portion of an abstract assembly step, text information explaining how to assemble or connect one or more of the product components. As described in Dr. Keyser's declaration, it appears that the variable portions of the assembly steps include the text labels "Cards For," "Slot," "Slot Type," and "Card" which, when resolved into assembly instructions, indicate to an assembler the track code, the slot, the type of slot, and the appropriate card for a given configuration. The screen shots on page 9 of Dell's motion provide an example of these instructions. A reasonable juror could conclude that this information explains how to assemble or connect one or more of the product components. Similarly, the undersigned has reviewed the evidence related to the text, "Data Cable Required," and is persuaded that this text is sufficient to meet the text information limitation, even though it may not always appear in the output of WCPP. Therefore, the court should deny the motion for summary judgment to the extent it asserts that WCPP does not include text information.

For essentially the same reasons identified regarding "strtmp" above, however, the undersigned is persuaded by Dell's argument that the identifiers "//CFImessage" and "InfoMessage" do not satisfy the text information limitation of claim 1. Although they constitute, in a loose sense, text that is later resolved into assembly instructions, as they appear in the assembly steps, these

6

identifiers do not explain how to assemble or connect one or more of the product components.

### 3. *WMPP*

Dell makes a brief argument that WMPP does not satisfy the text information limitation by use of its "labeling information, placeholder text, and error messages." These are essentially the same arguments made in connection with WCPP. Because a reasonable juror could find that the labeling text constitutes text information, the court should deny the motion for summary judgment on this issue.

### 4. *WSPP*

Dell also argues that WSPP fails to include text information. According to the motion, Abstrax contends that WSPP contains text information by use of (1) the variables "sb," "mapFileItem.locationId," and "djsControl.partnumber" and (2) the text "MASTER" and "SLAVE." Because the variables do not explain how to assemble or connect one or more of the product components, they do not constitute text information. Dell also argues, without response from Abstrax, that the "MASTER" and "SLAVE" text does not appear in the routine that Dr. Keyser identified as an abstract assembly step. As such, summary judgment should be granted that WSPP does not infringe claim 1 and any asserted claim that depends from claim 1.

### 5. *WXPP*

Finally, Dell argues that WXPP does not include text information in the abstract assembly steps. Abstrax contends that the use of "DisplayingString" and a software object "InfoContainer" satisfies the text information limitation. However, Abstrax does not respond to the assertions related to WXPP other than generally to assert that variables constitute text information because they are later resolved into assembly instructions that include text indicating how to assemble or connect

product components. In the undersigned's view, this is insufficient, and the motion for summary judgment should be granted that WXPP does not literally infringe claim 1 or any claim that depends from claim 1.

### B. *Image information*

Independent claim 1 and dependent claims 2-4 and 9 require that the variable portions of the abstract assembly steps have either (1) "an identifier of one or more computer graphics images to be displayed indicating how to assemble or connect one or more of the components of the product" or (2) "machine-readable instructions for the computer to draw and display one or more computer graphics images indicating how to assemble or connect one or more of the components of the product." Dependent claim 2 requires the use of both image-related options, and dependent claim 12 requires the use of the "image identifier" option. Under the parties' agreed construction, a "computer graphics image" is defined as "pictures, as opposed to alphabetic and numeric characters, for display on a computer screen."

Dell argues that ECPP, WCPP, and WMPP do not meet the claim limitations because the programs do not have either an identifier of or machine readable instructions for the computer to draw and display "computer graphics images . . . indicating how to assemble or connect one or more of the components of the product." With respect to WCPP and WMPP, Abstrax disputes Dell's position and points to various opinions from Dr. Keyser. Abstrax concedes that ECPP does not have the claimed graphics images, and partial summary judgment should therefore be granted that ECPP does not literally infringe claims 1, 2-4, 9, and 12 of the '328 patent.

#### 1. *WCPP*

With respect to the WCPP program, Dr. Keyser identifies at least four alternative computer

graphics images that he contends satisfy this claim limitation. In particular, the image represented by "back_chas.gif" is displayed as a graphical representation of the text "Back of Chassis." The image represented by "Power.gif" is displayed as a graphical representation of a lightning bolt. The image represented by "Audio.gif" is displayed as a musical note. And the image represented by "Data.gif" is displayed as a set of "0s" and "1s."

Dell contends that "back_chas.gif" is actually a display of text reading "back of chassis" and therefore cannot be a graphics image. Dell makes a similar argument with respect to the data display. It is unnecessary to reach these arguments, because the graphical images of the musical note (to depict the need for an audio cable) and the lightning bolt (to depict the need for a power cable) are sufficient to create a triable issue of fact on this issue. It is not necessary for the graphics image to include every step of the assembly or component connections. Rather, the claim language simply requires that the graphics image indicate how to assemble or connect one or more of the components of the product.

### 2.  *WMPP*

Dr. Keyser has identified, in the WMPP program, the identifier "//MBImage." This identifier represents a graphics image of a motherboard. Dell argues that this image does not satisfy the claim language because a picture of a motherboard, standing alone, does not indicate how to assemble or connect any of the components of the product. Dr. Keyser explains, however, that when the image is displayed with the memory placement information, it indicates to the builder the proper placement and connections for the memory components in the system being assembled. In the undersigned's view, this is sufficient to create a triable issue of fact on this limitation. The motion for summary judgment should therefore be denied.

*2.     Doctrine of equivalents*

Dell contends that there is no genuine issue of material fact on the question of infringement under the doctrine of equivalents. Abstrax agrees that its case is one for literal infringement. Abstrax argues, however, that the court should not grant summary judgment on the doctrine of equivalents because it wants to preserve its ability to raise infringement under the doctrine of equivalents in its rebuttal case. In particular, Abstrax argues:

> if Dell were to argue or establish at trial that one of its accused programs does not, as a factual matter, operate in the manner understood and described by Dr. Keyser–an approach not taken by Dell in its motion or by Dell's non-infringement expert–Abstrax should be permitted a full and fair opportunity to present rebuttal evidence. This would include presenting evidence that, if the program in fact operate in the manner asserted by Dell and not as described by Dr. Keyser, that operation still results in infringement under the doctrine of equivalents.

Abstrax's Response to Dell's MPSJ (Dkt. #185) at 18.

The undersigned agrees with Dell's argument that Abstrax has failed to demonstrate a genuine issue for trial. Abstrax does not argue that it has had insufficient opportunity to investigate the operation of the accused programs. Nor does Abstrax urge that it lacked an ample opportunity to take discovery into Dell's expert's opinions. Based on the summary judgment record, the undersigned recommends granting Dell's motion for summary judgment on the question of infringement under the doctrine of equivalents.

*3.     Indirect infringement*

Dell argues that no genuine issue of material fact exists on the claims for induced infringement and contributory infringement. Abstrax states in its response that "Abstrax does not presently assert that Dell infringes under a theory of inducement or contributory infringement, and furthermore has no plans to do so at trial." Abstrax's Response to Dell's MPSJ (Dkt. #185) at 19.

Nevertheless, Abstrax contends that there is an open issue regarding Dell's U.S. sales of products made in its foreign facilities. According to Abstrax, "when the facts fully surface, it may turn out that Dell has induced or contributed to the use of the '328 method by its foreign ODM contractors or by its overseas affiliates." *Id*. Abstrax desires to preserve its right to assert such infringement after it fully develops the facts surrounding imported computer systems. In light of the court's order compelling additional depositions, the undersigned agrees with Abstrax that summary judgment is premature at this point. The motion for summary judgment should be denied without prejudice to re-urging the argument in the context of a motion for judgment as a matter of law.

    4.    *Infringement under Section 271(g)*.

Section 271(g) provides, "[w]hoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer." 35 U.S.C. § 271(g). Dell contends it is entitled to summary judgment on any claim made under § 271(g) because the only product made by the patented method is the actual assembly instructions–not the finished computer products.

In *Bio-Technology General Corp. v. Genentech, Inc.*, 80 F.3d 1553 (Fed. Cir. 1996), the Federal Circuit addressed the scope of § 271(g). In that case, the court considered whether a human growth hormone ("hGH") was a product produced by a patented process, even though the claimed process was directed toward a method for producing a replicable cloning vehicle, not hGH. *Id*. at 1560-61. The court noted that the statute did not specify what products would be considered to have been "made by" the patented process, because Congress wanted the courts to resolve this question of proximity to the product of the patented process on a case-by-case basis. *Id*. at 1561. The court noted that the legislative history of § 271(g) expressly contemplated this type of situation in the

biotechnology field, and that the patent at issue expressly contemplated that the claimed process would be use to produce hGH. *Id*. Because the defendant used the claimed process as an essential part of its overall process for producing hGH, the court concluded that the district court did not err in finding that hGH was a product "made by" the patented process, even though performance of the patented process did not directly result in hGH. *Id*.

In *OKI America, Inc. v. Advanced Micro Devices, Inc.*, 2006 WL 2711555, at *12-14 (N.D. Cal. Sept. 21, 2006), the court applied the *Bio-Technology* holding to a patent involving a process for removing photoresist from the edges of wafers used to made semiconductor chips. The defendant sought summary judgment on the ground that its chips were not products made by the patented process. *Id*. at *12. The court rejected this argument. *Id*. at *15. The court held that the devices containing the chips diced from the wafer were directly derived from the wafer processing steps, even though the patented process directly affected only the wafer edges, which were later discarded. *Id*. at *14.

In this case, Dell has not shown an entitlement to summary judgment. Here, the stated purpose of the invention is to dynamically create assembly instructions for assembling the various components of a configurable product. The patent contemplates that the instructions will be used in the creation of an end product, and the defendant uses the accused systems as part of its manufacturing process to build finished computer systems–not simply to generate assembly instructions. There is a sufficient proximity between the performance of the patented method and the finished computer products to preclude summary judgment on the applicability of § 271(g). Therefore, it is recommended that the motion for summary judgment be denied on this issue.

**3.      Conclusion**

For the above-stated reasons, the undersigned recommends granting in part and denying in part Dell's motion for partial summary judgment of no infringement (Dkt. #161).

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within ten days after being served with a copy shall bar that party from de novo review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United States Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

SIGNED this 18th day of September, 2009.

_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE