IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ABSTRAX, INC., | § | |
| Plaintiff, | § | |
| vs. | § | CIVIL ACTION NO. 2:07-CV-221-DF-CE |
| DELL, INC., | § | |
| Defendant. | § | |

**O R D E R**

Before the Court is Defendant Dell's Objection to the Magistrate Judge's Report and Recommendation Regarding Defendant's Motion for Summary Judgment of Invalidity. Dkt. No. 245. Also before the Court are Plaintiff Abstrax's Response, Dell's reply and the parties' additional briefing on the motion. Dkt. No. 170, 183, 192, 202, 265 and 270. Having considered all the relevant papers and pleadings, the Court finds that Defendant's Objection to the Magistrate Judge's order should be **overruled**.

## I. BACKGROUND

Dell filed a motion for summary judgment of invalidity of U.S. Patent No. 6,240328 ("the '328 Patent"). Dell urged that no reasonable jury could fail to find the '328 Patent invalid as (1) anticipated by U.S. Patent No. 4,916,637 ("the IBM patent"); (2) rendered obvious in light of the IBM patent; and (3) being unpatentable subject matter under 35 U.S.C. § 101 and the Federal Circuit's en banc decision in *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008). Dkt. No. 170.

The Magistrate Judge recommended denying Dell's motion as to all three parts. Dkt. No.

224. First, the Magistrate Judge found that genuine issues of material fact precluded summary judgment with respect to Dell's argument on invalidity based on anticipation. Specifically, the Magistrate Judge found that Abstrax's technical expert offered testimony that the IBM patent fails to disclose two steps of the claimed method thereby creating a genuine issue for trial. Dkt. No. 224 at 3. For similar reasons, the Magistrate Judge recommended against granting Dell's motion with respect to obviousness. Again, the Magistrate Judge found genuine fact issues based on Abstrax's expert testimony that the IBM patent teaches away from the claimed method. *Id*. at 4. Finally, the Magistrate Judge found that the claims of the '328 Patent sufficiently transform a particular article into a different state or thing thus falling within the ambit of patent-eligible subject matter. *Id.* at 5.

## II. LEGAL PRINCIPLES

In a motion for summary judgment, the moving party has the initial burden of showing that there is no genuine issue of any material fact and that judgment should be entered as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). An issue is "material" where it involves a fact that might affect the outcome of the suit under the governing law of the underlying cause of action. *See Burgos v. S.W. Bell Tel. Co.,* 20 F.3d 633, 635 (5th Cir. 1994) (citing *Anderson,* 477 U.S. at 248). The nonmovant is not required to respond to a motion for summary judgment until the movant first meets its burden of demonstrating that there are no factual issues warranting trial. *Ashe v. Corley,* 992 F.2d 540 (5th Cir. 1993). Once the movant has shown the absence of material fact issues, however, the opposing party has a duty to respond, via affidavits or other means, asserting specific

facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

### III. DISCUSSION

#### A. Invalidity Under 35 U.S.C. §101

The patentability of a claim under §101 is a question of law, and a claim that fails to meet the requirements of §101 must be rejected. *Bilski*, 545 F.3d at 950. Under *In re Bilski*, a claimed process adheres to §101 if: "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *Id.* at 954. The parties dispute whether the patented method is tied to a particular machine. Fortunately, "[t]ransformation and reduction of an article 'to a different state of thing' is *the* clue to the patentability of a process claim that does not include particular machines." *Id.* at 955-956 (emphasis in original).

Dell argues that the Magistrate Judge erred in several ways. First, Dell claims that the Magistrate Judge erred by only analyzing claim 1, which contains several limitations absent from the other asserted independent claim, claim 10. Dkt. No. 245 at 7. According to Dell, Claim 10 fails to transform a particular article into a different state or thing. *Id.* at 7. Dell characterizes claim 10 as nothing more than *fill-in-the-blank* or *variable substitution* that can be performed entirely within the human mind. *Id.* Dell focuses on the "configuration models" of the claimed method and contends that they are not "particular articles" that meet the transformation test. *Id.*

Abstrax responds that Dell's characterization of the Magistrate Judge's analysis is incorrect. Abstrax contends that the Magistrate Judge analyzed all of the asserted claims and found that they met the transformation test described in *Bilski*. Dkt. No. 265 at 5. Additionally,

3

Abstrax argues that simply because a process can be performed in the human mind does necessarily make it ineligible under §101. *Id*.

In reply, Dell contends that both Abstrax's response and the Magistrate Judge's report fail to identify a "particular article" that is transformed by the claims of the '328 Patent. Dkt. No. 270 at 3.

As an initial matter, it is "inappropriate to determine the patent-eligibility of claim as a whole based on whether selected limitations constitute patent-eligible subject matter." *Bilski*, 545 F.3d at 958. The claims of the '328 Patent are generally directed to a method for assembling a product having components wherein the variable portions of a set of abstract assembly steps are resolved in accordance with data from a desired configuration. For example, claim 10 of the patent-in-suit recites:

> 10. A method, performed by a computer, for assembling a product having components, the method comprising the steps of:
>
> (a) providing one or more abstract assembly steps for assembling the product, the abstract assembly steps containing variable portions for assembling the product with potentially different configurations, the variable portions including variable parameters capable of representing different component information;
>
> (b) obtaining a configuration model corresponding to a requested configuration of the product, the configuration model including one or more of the component information lines corresponding to one or more components utilized in the requested configuration; and
>
> (c) applying the configuration model to the abstract assembly steps provided for assembling the product by inserting component information from the component information lines into the variable parameters of the variable portions of the abstract assembly steps to produce one or more assembly instructions for assembling the product to have the requested configuration.

In examining claim 10, the broader of the two asserted independent claims, the Court must determine if the patented method "transforms a particular article into a different state or thing." In answering this question, the Court keeps in mind two considerations: first, the transformation of the article must impose meaningful limits on the claim's scope to impart patentability; and, second, the transformation in the claimed process must not merely be insignificant extra-solution activity. *Bilski*, 545 F.3d at 961-962.

Dell contends that the "variable substitution" step does not transform a particular article into a different state or thing. Dell points to the "configuration model" as insufficient to constitute something that can be transformed. Dkt. No. 245 at 7. As discussed by the Federal Circuit, "the main aspect of the transformation test that requires clarification here is what sorts of things constitute 'articles' such that their transformation is sufficient to impart patent-eligibility under §101." *Id.* at 962. In *Bilski*, the Federal Circuit recognized that today's "articles" are often electronic signals and electronically manipulated data. Dell contends that because "configuration model" could be "'any computer-readable data concerning how parts, pieces, or components of a product fit together and how they are configured in the products,' it is no more particular than the 'variances of data from average values' rejected in *Abele*, the 'alarm limits' rejected in *Flook*, or the 'complex system' rejected in *Meyer*." Dkt. No. 245 at 8.

Dell's argument lacks merit. The rejected claim in Abele "did not specify any particular type or nature of data; nor did it specify how or from where the data was obtained or what the data represented." *Bilski*, 545 F.3d at 962. In contrast, the Federal Circuit held patent-eligible one of the claims in *Abele* that described the data as X-ray attenuation data produced in a two dimensional field by a computed tomography scanner. *Id.* "This data clearly represented

5

physical and tangible objects, namely the structure of bones, organs, and other body tissues. Thus, the transformation of that raw data into a particular visual depiction of a physical object on a display was sufficient to render that more narrowly-claimed process patent-eligible." *Id.* at 962-963. In this case, the configuration model – data concerning how parts, pieces, or components of a product fit together and how they are configured – represents physical and tangible objects and their respective structures. Further, the claims indicate that the data is obtained from the component information lines in the configuration model.

Dell, nevertheless, maintains that none of the asserted claims produce a visual depiction. Dkt. No. 245 at 9. Dell, however, takes the analogy too far. In *Abele*, the raw data was transformed into a particular visual depiction of a physical object on a display. Here, the raw data is transformed into assembly instructions for assembling the product to have the requested configuration. This visual depiction of the product is present in both claim 1 and claim 10. "So long as the claimed process is limited to a practical application of a fundamental principle to transform specific data, and the claim is limited to a visual depiction that represents specific physical objects or substances, there is no danger that the scope of the claim would wholly preempt all uses of the principle." *Bilski*, 545 F.3d at 963.

Finally, going back to the two considerations mentioned above, the transformation of "configuration model" data imposes meaningful limits on the claim's scope and does not fall into the category of insignificant extra-solution activity. To be sure, "configuration model" was a term proposed for claim construction by both parties. Ostensibly, a claim term that both parties feel warrants construction would impose limits on a claim and would not be merely extra-solution activity.

Therefore, after examining the claims as a whole, this Court finds that they satisfy the requirements for patent eligibility under 35 U.S.C. §101 and *In re Bilski*. As such, Dell's objection to the Magistrate Judge's report and recommendation regarding invalidity under §101 is hereby **overruled**.

## B. Invalidity Under 35 U.S.C. §102

The Magistrate Judge reviewed the summary judgement record as well as the prior art reference and found that Abstrax presented genuine issues of material fact with respect to anticipation and denied summary judgment.

Dell objects to the Magistrate Judge's conclusion. Dkt. No. 245 at 9. Dell argues that there are no genuine issues of fact as to whether U.S. Patent No. 4,916,637 ("the IBM patent") discloses (1) "abstract assembly steps" and (2) the step of "applying the configuration model to the abstract assembly steps." *Id.* at 10. Dell also accuses Abstrax of improperly manufacturing a genuine issue of material fact by having its expert, Dr. Keyser, submit a declaration that, according to Dell, contradicts his deposition testimony. *Id*. at 12-13.

Abstrax responds that (1) Dell asserted invalidity positions that were not disclosed in its P.R. 3-3 disclosures; (2) Dell failed to make a prima facie showing that the IBM patent anticipated or rendered obvious any claim of the '328 Patent; and (3) Abstrax presented substantial evidence that the IBM patent does not in fact anticipate or render obvious any claim of the '328 Patent. Dkt. No. 265 at 6.

Dell argues that Abstrax's expert Dr. Keyser "manufactures" a fact issue in his declaration dated July 21, 2009. Dr. Keyser's July declaration is substantially similar to his validity expert report of March 2, 2009. In fact, it is word for word the same except for a 26-page section in which

7

Dr. Keyser responds to Dell's motion for summary judgment. Dell claims neither Abstrax nor Dr. Keyser have offered an explanation for any inconsistencies and feels that any question of fact created by this declaration would be contrived and not genuine. Dr. Keyser, however, notes that Dell's interpretation of the IBM patent in its summary judgment motion differs from the theories laid out in the report of Dr. Wood, Dell's expert, to an extent that it is absent from his rebuttal report. Dkt. No. 183-5 at 35. As such, Dr. Keyser seeks to provide an initial response to those theories. *Id.*

"[A] nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony." *Albertson v. T.J. Stevenson & Co., Inc.,* 749 F.2d 223, 228 (5th Cir. 1984). In this case, however, Dr. Keyser justified the need for his declaration and provided sufficient explanation for any inconsistencies between his declaration and deposition testimony. *See, e.g.,* Dkt. No. 183-5 at 43, 57-58. In light of this, the evidence is such that a reasonable jury could return a verdict for the non-moving party. As the Magistrate Judge found, Abstrax has come forward with evidence sufficient to create a genuine issues of material fact as to several limitations of the patent-in-suit.

Dell bears the burden of proving anticipation by clear and convincing evidence. Based on the foregoing, the Court finds that Dell has not met its burden. As such, Dell's objection to the Magistrate Judge's report and recommendation regarding invalidity under §102 is hereby **overruled**.

## C. Invalidity Under 35 U.S.C. §103

Dell also moved for summary judgment of invalidity under §103 arguing that the asserted claims are rendered obvious by the IBM patent in combination with the knowledge of a person of ordinary skill in the art. The Magistrate Judge found that Dell did not meet its burden with

respect to invalidity of the patent-in-suit and concluded that genuine issues of fact weighed against summary judgment. Fundamental to the Magistrate Judge's finding was Dr. Keyser's assertion that the IBM patent taught away from the claimed method and that the claimed method yielded unexpected results. Dkt. No. 224. at 4. This Court finds no error in the Magistrate Judge's reasoning and adopts his conclusion for the same reasons. Thus, Dell's objection to the Magistrate Judge's report and recommendation regarding invalidity under §103 is also **overruled.**

## IV. CONCLUSION

For the reasons stated above, Dell's Objection to the Magistrate Judge's Report and Recommendation Regarding Defendant's Motion for Summary Judgment of Invalidity (Dkt. No. 245) is hereby **OVERRULED**, and the Magistrate Judge's Report and Recommendation Regarding Defendant's Motion for Summary Judgment of Invalidity (Dkt. No. 224) is hereby **ADOPTED**.

**SIGNED this 7th day of October, 2009.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE